Judge Owbi.ev
delivered tbo Opinion of the Court.
Chappell sold to a man by the name 0f Ditto, three negroes, a woman and her two children, for the price of eight hundred and fifty dollars, four hundred and fifty dollars of which sum, was paid by Ditto, and an obligation executed by him to Chappell, for the residue of the price. Before this obligation was discharged by Ditto, Jones, who resided in the state of Virginia, came to this country, claimed the negroes which had been purchased by Ditto, as belonging to him and his brothers, and threatened to sue for them. After some altercation, an agreement was concluded between Jones and Chappell, whereby the difference was adjusted, Jones’ claim to the negroes surrendered, the obligation which Ditto had given to Chappell delivered up, and a new bond for the same 'amount *423 executed by Ditto to Jones. By the agreement other sums' were to be paid by Chappell, but according to the view we have taken of this case, it is not necessary to make further mention of them.
Chapcll’s bill j£esegantract a„k for in- ’ junction,
Recreo of the <"ucmt 00urt-
C. sold cc r-^u“^lave ,■+. ~ resident, °ame to the claimed'them arid by falso statements^ to^”rFea¿ej, toD. bisobligatio ns for j„onpriroaa[je ^’¿a’u him the like bond s; after-the'" frau k — held be may have ^g/t roi the judgmei iis at law.
Jones then returned to Virginia, and Chappell, discovering, as he alleges, that in making the agreement, he had been imposed on and deluded by the fraudulent misresentations and artifice of Jones, ex-kibited his bill in equity, against Jones and Ditto, praying to be decreed the benefit of the judgment which Jones had recovered at law, upon the bond which had been executed by Ditto to Jones, tinder the agreement, and that Jones be enjoined from the collection of the judgment, &c.
An injunction was granted in accordance to the prayer of the bill, and on a final bearing the injunctiou was made perpetual, and Chappell permitted to use the name of Jones in collecting the judgment against Ditto.
To reverse that decree, this writ of error has been prosecuted by Jones.
If, on account of the fraud, it was correct to make any decree in favor of Chappell, the decree which was rendered, is evidently as favorable to Jones as it should be. The judgment against Ditto is not only part of the price, which he was by the purchase from Chappell, to have paid for the negroes, hut it was moreover obtained upon a bond which he executed to Jones in pursuance to the agreement he-tween Ditto and Chappell, in relation to the negroes. The judgment is therefore justly due from Ditto, and if, through the fraud of Jones, the obligation which Ditto had previously given to Chappell, was delivered up, and the bond for the same sum executed to Jones, the money due from Ditto ought in justice to be paid to Chappell; and it surely cannot he incompatible with the principles of equity, to consider Ditto, as respects that debt, in the light of a trustee for the use of Chappell, and to secure to Chappell the money due on the j udgment. It is peculiarly proper to do so, not only on account of the circumstances of the transaction, but *424 because Jones resides out of this state, and it is only by acting upon the debt due from Ditto, who is within the jurisdiction of the court, that justice can be done, and the fraud, if any, committed by Jones, relieved against.
J. had in the moan time recovered on the bond against D.
Case of a compromise obtained by fraud.
Courts of o-' quity are disinclined to set aside contracts of com'promise-
Bul — •
Whorls the compromise is obtained by fraudulent misrepresentations, the court will rescind it.
And that in making the agreement, Chappell was overreached by the misrepresentations and fraud of Jones, we think an attentive examination of the depositions contained in the record fully prove. Nothing is more clear, than that neither Jones nor his brothers, for whom he claimed the negroes, had any right to them; ant! it is quite evident from the proof, that Jones, by falsely representing that he and his brothers were entitled to the negroes by a deed of entailment which was executed to them by their deceased father in bis lifetime, induced Chappell, who had been the husband of their deceased mother, and who appeared to be a credulous old man, to confide in his representations, and conclude the agreement by which the bond was executed by Ditto.
The claim of Jones must, it is true, have been made known to Chappell before the agreement was entered into, so that the agreement ought to be considered in the light of a compromise between the parties of an existing controversy, and we know full well, that courts of equity at all times observe great circumspection in relieving against contracts of that sort.
But the disinclination of the court to meddle with such contracts, ought never to be the means of sanctioning unfair and fraudulent conduct. The parties may justly buy their peace on their own terms, and when honestly and fairly done, their contract should be the law for the court. But fraud, in every possible shape is odious; it vitiates all contracts, and whenever perceived, it wakens the energy, and puts in action the justice of the court. It would, therefore, be contrary to the usage and principles of equity to permit Jones to enjoy the benefit of the contract, which was procured through his fraudulent misrepresentations. It was proper in the court below to relieve against it.
Where the record shews the parties appeared and there was no objection made to the hearing, it cannot be assigned for error that the cause was tried the term the answer was filed.
This court will not presume a witness and a security in the injunction bond, are the same porson, merely from the identity of the name where that allegation had not been made below.
Objections to depositions cannot be made here for the first time.
Wickliffe, for plaintiff; Chapeze, for defendant
In the preceding remarks, we have omitted to notice some objections which were taken in argument, and which do not go so much to the merits, as to the regularity of the preparation of the cause in the court below; but we did so, because we discovered nothing substantial in those objections.
It was first objected that 'the cause ought not to have been heard at the time it was, because as it was contended, the answer of the defendant was not filed until the term at which the cause was heard. But if the fact be so, it is sufficient to remark that the parties appeared by their counsel at the hearing, and having failed to object to the cause being taken up, it is now too late to object in this court.
It was again objected, {hat the court err,ed in permitting one of the depositions that was read, to be used as evidence in the cause. The deposition to which the objection is taken, is said to be the deposition of one of the sureties in the injunction bond, which was executed in this case, and hence it is insisted, that the witness is incompetent, and that his deposition should have been excluded. It may however he remarked that there is no proof in the cause, that the witness whose deposition is objected to, is the same person that signed the injunction bond. It is true, the name of the witness is the same as that which is subscribed to the bond; but there may be more than one person by the same name, and as there was no objection to the deposition in the court below, we ought not to presume the witness to he the same person that signed the bond.
But were it even in proof, that the witness is the same person, still the objection now taken in this court for the first time, could not be sustained. It 'was competent for the parties to waive objections to the competency of the Avitnesses in the court beloAV, and it is but reasonable to presume that they have done so, when as in this case, the record shows no objection to the depositions; such has been the repeated decisions of this court.
The decree must be affirmed with cost.